CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 17 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LBCMT 2007-C3 SEMINOLE TRAIL, LLC, | ) |
| Plaintiff, | ) Civil Action No. 3:12CV00025 |
| v. | ) **MEMORANDUM OPINION** |
| ERIC D. SHEPPARD | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| and | ) |
| PHILIP WOLMAN, | ) |
| Defendants. | ) |

LBCMT 2007-C3 Seminole Trail, LLC ("Seminole Trail") filed this diversity action against Eric D. Sheppard and Philip Wolman (collectively, "defendants"), for breach of a guaranty agreement. The case is presently before the court on Seminole Trail's motion for summary judgment. For the reasons that follow, the motion will be granted.

I. **Background**

Sheppard and Wolman are managers of WSG Charlottesville, LLC ("WSG Charlottesville"), one of several corporations set up by the defendants for the development of retail shopping centers throughout the Commonwealth of Virginia. On July 12, 2007, WSG Charlottesville obtained a $2,480,000.00 commercial mortgage loan from Lehman Brothers Bank, FSB. The loan is evidenced by a promissory note ("Note") signed by Wolman, and secured in part by a deed of trust on certain property in Albemarle County, Virginia ("the Property"), which was signed by Sheppard.

The Deed of Trust required WSG Charlottesville to "pay the Debt at the time and in the manner provided in the Note . . . ." (Deed of Trust at § 3.1.) The Note required WSG

Charlottesville to make payments on the amounts due on the eleventh day of each month. (Note at § 1(i). Under the Deed of Trust, an event of default occurred, among other circumstances, "if any portion of the Debt [was] not paid on the date the same [was] due." (Deed of Trust at § 9.1.) Upon the occurrence of an event of default, the lender was authorized to take certain actions, "without notice or demand," including "declar[ing] the entire unpaid Debt to be immediately due and payable." (Id. at § 10.1.)

Contemporaneously with the signing of the Note and the Deed of Trust, Sheppard and Wolman executed a Guaranty of Recourse Obligations of Borrower ("Guaranty"), pursuant to which they "absolutely and unconditionally" guaranteed "the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower (hereinafter defined)." (Guaranty at 1.) As relevant in the instant case, the "Guaranteed Recourse Obligations of Borrower" include "the entire Debt . . . if the Property or any part thereof shall become an asset in . . . a voluntary bankruptcy or insolvency proceeding." (Id. at 2.) The term "Debt," as used in the Guaranty, includes the "the principal sum evidenced by the Note and secured by the [Deed of Trust], or so much thereof as may be outstanding . . . , together with interest thereon at the rate of interest specified in the Note and all other sums . . . which may or shall become due and payable pursuant to the provisions of the Note, the [Deed of Trust] or the other Loan Documents." (Id. at 1.)

The Guaranty and other documents evidencing and securing the loan were ultimately assigned to Seminole Trail. In late 2010, Sheppard and Wolman sought to refinance WSG Charlottesville's loan, after the retail development project experienced "financial valuation problems." (11/30/2012 Sheppard Decl. at ¶ 6.) According to the defendants, Seminole Trail advised Sheppard that no single loan could be refinanced, that all of the loans in the portfolio had to be refinanced together, and that refinancing discussions could not proceed until WSG

2

Charlottesville had missed loan payments for sixty days. WSG Charlottesville subsequently stopped making payments on the Note in late 2010, and Sheppard engaged in discussions about refinancing the loan with LNR Partners, LLC ("LNR"), the special servicer of the loan.

Sheppard informed LNR on March 14, 2011 that he had two potential lenders interested in financing the loan, and on April 21, 2011, he obtained a preliminary letter of intent for the refinancing of the loans from a company known as Ladder Capital. By June 8, 2011, Sheppard had signed a comprehensive term sheet and application for the Ladder Capital loan, which required a good faith deposit in the amount of $190,000.00. Several days later, Ladder Capital informed Sheppard that it was no longer interested in proceeding with the refinancing due to an existing business relationship with LNR.

On March 31, 2011, LNR sent WSG Charlottesville a notice of default based on its failure to make monthly payments within the time provided under the Note. Just over one year later, on April 9, 2012, LNR issued a demand and notice of acceleration, which required full payment due under the loan documents. Three days later, the substitute trustee gave notice of the sale of the Property subject to the Note. Prior to the sale set for May 1, 2012, WSG Charlottesville filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Virginia, and listed the Property as an asset of the bankruptcy estate. See In re WSG Charlottesville, LLC, No. 12-12785 (Bank. E.D. Va. 2012).

On May 24, 2012, Seminole Trail filed the instant action against the defendants. Seminole Trail claims that Sheppard and Wolman are personally liable for the entire debt under the terms of the Guaranty, since the Property became an asset in a voluntary bankruptcy proceeding.

The case is presently before the court on Seminole Trail's motion for summary judgment. The court held a hearing on the motion on January 30, 2013. Following the hearing, the parties

were granted the opportunity to submit supplemental briefs. Those briefs have been filed and the matter is ripe for review.

## II. Defendants' Rule 56(d) Request

In their initial response to Seminole Trail's motion for summary judgment, the defendants requested an order denying or deferring consideration of the motion pending the completion of discovery, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. Under this rule, the court may defer considering a motion for summary judgment or deny the motion, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). While summary judgment is generally appropriate "only after adequate time for discovery," Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996), a Rule 56(d) request may be denied if "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment," Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (internal citation omitted).

Having carefully reviewed the defendants' answers and briefs, as well as the affidavits of Sheppard and the defendants' attorney, the court concludes that ruling on the plaintiff's motion for summary judgment should not be deferred under Rule 56(d). Specifically, the court concludes that the affidavits fail to identify any additional evidence that would create a genuine issue of material fact sufficient to preclude summary judgment. While the defendants' attorney contends that discovery is necessary to further develop the defenses raised in the defendants' answers, the court concludes, for the reasons set forth below, that the asserted defenses are insufficient as a matter of law to defeat the plaintiff's claim under the Guaranty. Accordingly, the court finds that

no further discovery is necessary, and that there is no need to defer any ruling on the motion for summary judgment.

### III. Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-movants. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### IV. Discussion

Because the court's jurisdiction is based on the diversity of the parties, the court applies the choice of law rules of Virginia, the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999). In this case, the parties agreed that the Guaranty would be governed by the law of the state where the Property is located. Because the Property is located in Virginia, the court will apply Virginia substantive law in its review of the plaintiff's claim and the affirmative defenses raised by the defendants.

#### A. The Plaintiff's Prima Facie Case

Under Virginia law, a guaranty is "an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform." McDonald v. Nat'l Enters., Inc., 547 S.E.2d 204, 207 (Va. 2001) (internal citations omitted). In an action to enforce a guaranty, a plaintiff may establish a prima facie

entitlement to recovery by demonstrating: (1) the existence and ownership of the guaranty; (2) the terms of the primary obligation; (3) default on the obligation by the primary obligor; and (4) nonpayment of the amount due under the guaranty contract. See Id.

In this case, there is no dispute as to the first, second, and fourth elements of the plaintiff's claim. Seminole Trail has produced the Guaranty by which the defendants absolutely agreed to be liable for the entire debt, in the event that the Property became an asset in a voluntary bankruptcy proceeding. The defendants admit in their answers to the complaint that they executed the Guaranty, and that the terms of the Guaranty speak for themselves. The defendants further admit that WSG Charlottesville executed the Note and the Deed of Trust, and that the terms of those documents speak for themselves. Finally, it is undisputed that WSG Charlottesville initiated a voluntary bankruptcy proceeding in which the Property was listed as an asset of the bankruptcy estate, thereby triggering the defendants' liability under the terms of the Guaranty, and that the amount due under the Guaranty has not been paid by the defendants.

In their brief in opposition to the motion for summary judgment, the defendants focus solely on the third element, arguing that a genuine dispute exists as to whether an event of default occurred under the loan documents. For the following reasons, however, the court concludes that the defendants' argument fails as a matter of law.

It is undisputed that WSG Charlottesville failed to make monthly payments within the time required under the Note in late 2010 and in two or more months in 2011. See 11/30/2012 Sheppard Decl. at ¶ 6; 8/1/2012 Sheppard Decl. at ¶ 5. Under the express terms of the Deed of Trust, an "event of default" occurs "if any portion of the Debt is not paid on the date the same is due . . . ." (Deed of Trust at § 9.1(a).)

Rather than disputing the fact that WSG Charlottesville failed to make payments within the time required under the Note, the defendants argue that the resulting default was not valid, because the March 31, 2011 notice of payment default was addressed only to WSG Charlottesville and not to its attorney. This argument fails as a matter of law, however, because written notice of a payment default was not required under the Note or the Deed of Trust.

Pursuant to § 11 of the Note, WSG Charlottesville "and all others who may become liable for the payment of all or any part of the Debt" expressly "<u>waive[d]</u> presentment and <u>demand for payment</u>, . . . and notice of . . . <u>non-payment</u>, and all other notices of any kind, other than notices specifically required" by the Note, the Deed of Trust, and other loan documents. (Note at § 11.) While some occurrences enumerated in the Deed of Trust specifically require written notice from the lender in order to constitute an "event of default," the failure to make a timely loan payment is not one of them.

In quoting from the Deed of Trust to support their argument to the contrary, the defendants omit the material portion of the document. Under § 9.1 of the Deed of Trust:

> The occurrence of <u>any one</u> or more of the following events shall constitute an "Event of Default": (a) <u>if any portion of the Debt is not paid on the date the same is due</u> or if the entire debt is not paid before the Maturity Date; [or] (m) if for more than ten (10) days after notice from Lender, Borrower shall continue to be in default under any <u>other</u> term, covenant, or condition of the Note, this Security Instrument or the other Loan Documents in the case of any default which can be cured by the payment of a sum of money or for thirty (30) days after notice from Lender in the case of any other default . . . .

(Docket No. 23-1 at ¶ 9.1) (emphasis added). In their brief in opposition to the motion for summary judgment, the defendants argue that notice was required under subpart (m) of § 9.1. However, as set forth above, § 9.1(m) applies only where a borrower is in default under any term of the Note or Deed of Trust "other" than those identified in the previous subparts. <u>Id.</u> Since

7

WSG Charlottesville's failure to make timely loan payments clearly constituted an "event of default" under subpart (a) of § 9.1, subpart (m) is inapplicable.

For these reasons, the court concludes that the defendants' notice argument fails as a matter of law,[1] and that Seminole Trail has made a prima facie showing that it is entitled to summary judgment on its claim under the Guaranty.

### B. The Guarantors' Defenses to Recovery

In their answers to the complaint, the defendants asserted the following affirmative defenses: unclean hands, waiver, estoppel, laches, and breach of the implied covenant of good faith and fair dealing. For the following reasons, the court concludes that each of the asserted defenses fails as a matter of law.[2]

#### 1. Unclean Hands and Laches

Under Virginia law, the doctrines of unclean hands and laches apply only in equity to bar equitable actions. See Portsmouth v. Chesapeake, 349 S.E.2d 351, 354 (Va. 1986) (emphasizing that "[l]aches, a species of estoppel, is an equitable defense," and that "[a] proceeding to enforce a legal right is not subject to the equitable defense of laches"); Cline v. Berg, 639 S.E.2d 231, 233 (Va. 2007) (explaining that the doctrine of unclean hands is "an anxient maxim of equity courts").

---

[1] Even if the defendants could establish that the delivery of the notice of default was deficient, the court is of the opinion that this would not preclude Seminole Trail from recovering under the Guaranty. As another district court recently noted in a similar case against Sheppard and Wolman, the payment default was not the event that triggered the defendants' liability under the Guaranty. See LBCMT 2007-C3 Sterling Retail, LLC v. Sheppard, No. 1:12-cv-470, 2013 U.S. Dist. LEXIS 69913, at *13 (E.D. Va. May 15, 2013). Instead, "[t]he terms of the Guaranty . . . explicitly provided that the guarantors would be liable for the entire debt if the property became the subject of a voluntary bankruptcy proceeding." Id. Once the Property became subject to voluntary bankruptcy proceedings, "the Guaranty became enforceable and [any] minimal deficiencies in the delivery of the Notice of Default do not preclude Plaintiff's recovery." Id. at *14.

[2] In light of the court's rulings, the court need not reach the issue of collateral estoppel raised by the plaintiff in relation to the bankruptcy court's decision in In re WSG Dulles, L.P., 12-11149, 2013 Bankr. LEXIS 34 (Bankr. E.D. Va. Jan. 4, 2013).

Because Seminole Trail's claim is one for breach of the Guaranty, and seeks damages at law rather than equity, the defendants' affirmative defenses of unclean hands and laches cannot defeat summary judgment.

2. **Waiver**

The defendants next assert the defense of waiver, which is defined as "an intentional relinquishment of a known right." See Stanley's Cafeteria, Inc. v. Abramson, 306 S.E.2d 870, 873 (Va. 1983). This defense requires proof that the plaintiff (1) had knowledge of the facts basic to the exercise of the right, and (2) the intent to relinquish the right. See Employers Commercial Union Ins. Co. of Am. v. Great Am. Ins. Co., 200 S.E.2d 560, 562 (Va. 1973). As the parties relying on an alleged waiver, the defendants bear the burden of proving such waiver by "clear, precise and unequivocal evidence." Utica Mutual Ins. Co. v. Nat'l Indemnity Co., 173 S.E.2d 855, 858 (Va. 1970).

These principles, applied in the instant case, compel the conclusion that the defendants' waiver defense is unavailing. The defendants' brief in opposition to the plaintiff's motion provides no discussion of this defense, and contains no allegations which would support the notion that Seminole Trail knowingly and intentionally waived its right to recover under the Guaranty. Moreover, the Guaranty expressly provides that it may be waived "only by an agreement in writing signed by the party against whom enforcement of any . . . waiver . . . is sought." (Guaranty at 4.) Under Virginia law, "such clauses must be given effect." Chas. H. Tompkins Co. v. Lumbermens Mut. Cas. Co., 732 F. Supp. 1368, 1377 (E.D. Va. 1990) (citing Chesapeake & Potomac Tel. Co. v. Sisson & Ryan, Inc., 362 S.E.2d 723, 730 (Va. 1987)); see also Trex Co. v. Exxonmobil Oil Corp., 234 F. Supp. 2d 572, 581 (E.D. Va. 2002) (holding that a clause requiring any waiver to be in writing was enforceable under Virginia law and, thus, that the defendant could not rely on a waiver

defense absent a written waiver signed by the plaintiff). As no such written waiver has been alleged in any submission by the defendants, the court concludes that the defense of waiver provides no bar to summary judgment in the instant case.

### 3. Equitable Estoppel

The defendants next argue that Seminole Trail is barred from recovering under the Guaranty, because WSG Charlottesville relied on representations made by the plaintiff that induced its default. Specifically, the defendants allege that Sheppard was told by the plaintiff that WSG Charlottesville could not refinance its loan unless it missed payments for sixty days, and that WSG Charlottesville stopped making payments based on this conversation.

The Supreme Court of Virginia has defined the doctrine of equitable estoppel as "the consequence worked by operation of law which enjoins one whose action or inaction has induced reliance by another from benefiting from a change in his position at the expense of the other." Employers Commercial Union Ins. Co., 200 S.E.2d at 562. The doctrine's requirements are "specific and rigorous." Anderson v. Cox, 977 F. Supp. 413, 417 (W.D. Va. 1997). "The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) change of position, and (4) detriment, and the party who relies upon estoppel must prove each element by clear, precise, and unequivocal evidence." Princess Anne Hills Civil League v. Susan Constant Real Estate Trust, 413 S.E.2d 599, 603 (Va. 1992).

Applying these principles, the court concludes that the asserted defense of estoppel is without merit. Even if an agent of Seminole Trail made the representations summarized above, the defendants' submissions are devoid of any allegations sufficient to establish a change of position by the plaintiff. While the defendants appear to suggest that Sheppard was not advised that missed payments would constitute events of default, the defendants have at no point alleged

that the plaintiff represented that missing payments would not result in default or otherwise trigger obligations under the loan documents. Likewise, the defendants have not alleged any facts which suggest that the plaintiff offered to waive the terms of the Note, which expressly prohibits oral modifications. See Note at § 9 ("This Note may not be modified, amended, waived, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.").

Additionally, and perhaps most importantly, the Supreme Court of Virginia has made it clear that, "[i]n an action to enforce an independent contract of guaranty, the [plaintiff] is proceeding on the guaranty, not on the underlying note." McDonald, 547 S.E.2d at 207. By the Guaranty's own terms, which the defendants have recognized speak for themselves, the defendants became liable for the entire debt of WSG Charlottesville when the Property became an asset in the voluntary bankruptcy proceeding. The defendants' obligations under the Guaranty "are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note, the Security Instrument, or the other Loan Documents," and "continue in full force and effect as to any modification . . . of the Note, the Security Instrument, or any of the other Loan Documents." (Guaranty at 1, 3.) In the absence of any allegation suggesting that the plaintiff changed its position with respect to the defendants' obligations under the Guaranty, the defense of equitable estoppel provides no bar to summary judgment in this case. See, e.g., U.S. Bank, NA v. Hoffman, 409 F. App'x 302, 303 (11th Cir. 2011) (rejecting the defendant's claim that the bank should be equitably estopped from enforcing a guaranty agreement because the bank's actions and misstatements allegedly contributed to the

default of the loan, where the defendant failed to show "how any act or statement made by U.S. Bank is inconsistent with its instant claim seeking payment under the guaranty agreement").

### 4. Breach of the Implied Covenant of Good Faith and Fair Dealing

In their final affirmative defense, the defendants claim that they should not be held liable under the Guaranty because the plaintiff breached its implied duty of good faith and fair dealing. Under Virginia law, every contract includes an implied covenant of good faith and fair dealing. See Wolf v. Fannie Mae, No. 11-2419, 2013 U.S. App. LEXIS 4300, at *20 (4th Cir. Feb. 28, 2013) (citing Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)); Va. Vermiculite, Ltd. v. W.R. Grace & Co., 156 F.3d 535, 541-42 (4th Cir. 1988). However, "no implied duty arises with respect to activity governed by express contractual terms." Skillstorm, Inc. v. Electronic Data Systems, LLC, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (citing Ward's Equip., Inc. v. New Holland N. Am., 493 S.E.2d 516, 520 (Va. 1997)). Thus, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights," and courts will not use the implied covenant as the "vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." Ward's Equip., Inc., 493 S.E.2d at 520. As explained by the Fourth Circuit, "although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party." Va. Vermiculite, Ltd., 156 F.3d at 542.

In this case, the terms of the Guaranty signed by the defendants expressly provide that if the Property subject to the debt becomes part of a voluntary bankruptcy proceeding, the defendants become personally liable for the debt. Thus, when the Property was listed as an asset in WSG Charlottesville's Chapter 11 bankruptcy proceeding, that event triggered the defendants' liability

under the Guaranty. There is simply no exercise of discretion involved, and the implied covenant of good faith and fair dealing cannot be used to alter the defendants' express contractual obligations. See LBCMT 2007-C3 W. Broad Street, LLC v. Sheppard, No. 3:12-cv-295, 2013 U.S. Dist. LEXIS 65088, at *15 (May 7, 2013) (rejecting Sheppard and Wolman's affirmative defense of breach of the implied covenant of good faith and fair dealing); LBCMT 2007-C3 Sterling Retail, LLC, No. 1:12-cv-470, 2013 U.S. Dist. LEXIS 69913, at *15 (E.D. Va. May 15, 2013) (same).

Having concluded that each of the defendants' affirmative defenses fails as a matter of law, the court will grant the plaintiff's motion for summary judgment.

### C. Amount Due and Owing

The plaintiffs have filed an affidavit from Jorge Rodriguez, Asset Manager for LNR Partners, which indicates that the total amount due and owing under the Note as of April 11, 2012 was $3,444,770.54, with per diem interest accruing at a rate of $642.29 until paid. The payoff amount includes default interest totaling $105,211.47 and a prepayment premium in the amount of $664,844.58.

#### 1. Default Interest

Section 4 of the Note provides in pertinent part as follows:

DEFAULT INTEREST

Borrower does hereby agree that upon the occurrence of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at a rate (the "Default Rate") equal to (i) the greater of (a) the Applicable Interest Rate plus three percent (3%) and (b) the Prime Rate (as hereinafter defined) plus four percent (4%) or (ii) the maximum interest rate that Borrower may by law pay, whichever is lower. The Default Rate shall be computed from the occurrence of the Event of Default until the earlier of the date upon which the Event of Default is cured or the date upon which the Debt is paid in full. Interest calculated at the Default Rate shall be added to the Debt, and shall be deemed secured by the Security Instrument . . . .

13

(Note at § 4.) In accordance with § 4, LNR added three percent to the Applicable Interest Rate of 6.47% for an aggregate interest rate of 9.47%. In their supplemental brief in opposition to the plaintiff's motion for summary judgment, the defendants argue that the default interest requested by Seminole Trail constitutes an unlawful penalty. Having reviewed the loan document and applicable authority, however, the court concludes that the default interest rate is lawful and enforceable

The Virginia legislature has expressly declined to cap interest rates applicable to loans in the amount of $5,000 or more for business or investment purposes. See Va. Code § 6.2-317(B). The legislature has further provided, with respect to such loans, that "[n]o person shall, by way of defense or otherwise, avail himself of the provisions of this chapter [pertaining to interest and usury], or any other case law relating to usury or compounding of interest, to avoid or defeat the payment of interest, or any other sum . . . ." Id. Considered in their entirety, the Virginia statutes applicable to interest rates "indicate a clear legislative intent to permit parties, particularly sophisticated businesses, to set their own interest rates as part of their overall bargain." Saul Subsidiary I Ltd. P'ship v. Best Buy Stores, L.P., No. 08-930, 2010 U.S. Dist. LEXIS 14980, at *7 (D. Md. Feb. 22, 2010) (applying the interest rate statutes previously codified in Title 6.1 of the Code of Virginia)

Federal courts applying Virginia law have consistently upheld and enforced provisions similar to the default interest provision agreed upon in the instant case. See, e.g., Agri-Tech, Inc. v. Brewster Heights Packing, Inc., No. 92-2007, 1993 U.S. App. LEXIS 24921, at *23 (4th Cir. Sept. 28, 1993) (upholding a "contracted-for late charge of 1-1/2% per month (18% per annum)"); Saul Subsidiary I Ltd. P'ship, 2010 U.S. Dist. LEXIS 14980, at *7 (enforcing an agreed upon interest rate applicable to late payments); Florida Asset Fin. Corp. v. Dixon, 228 B.R. 166, 174

(W.D. Va. 1998) (holding that a contractual default rate of interest did not violate state usury laws or function as an unenforceable penalty); Torre v. Myriad Indust., Inc., No. 96-305, 1997 U.S. Dist. LEXIS 11188, at *8 (W.D. Va. Feb. 5, 1997) (emphasizing that the court could find no provision in Virginia law to support the defendant's contention that the contract's default interest rate constituted an unenforceable penalty). Consistent with these rulings, the court concludes that the default interest provision expressly agreed upon by WSG Charlottesville is valid and enforceable, and that the plaintiff is entitled to an award of default interest.

### 2. **Prepayment Premium**

The defendants also argue that Seminole Trail is unable to collect a prepayment premium, since it elected to accelerate the loan balance. However, under the clear language of the Note, the borrower is required to pay a prepayment premium upon acceleration of the debt, regardless of whether the debt was actually prepaid. The Note specifically provides for the prepayment premium to apply to "repayment of all or any portion of the principal amount of this Note made during the continuance of any Event of Default or after an acceleration of the Maturity Date under any circumstances . . . ." (Note at § 5.)

The defendants cite no Virginia authority to support their argument that a lender may not accelerate a loan and also claim a prepayment premium. The court's own review of the applicable case law reveals that "the federal circuit courts to have addressed prepayment premiums in general have found that prepayment premiums would be allowed in the case of acceleration of the debt by the lender if the parties had expressly provided for such in the loan agreement." United States v. Harris, 246 F.3d 566, 572 (6th Cir. 2001) (citing cases); see also Petroleum & Franchise Funding, LLC v. Dhaliwal, 688 F. Supp. 2d 844, 850 (E.D. Wis. 2010) (noting that "courts typically enforce prepayment fees regardless of acceleration, when the prepayment

provision anticipates that such fee will be paid whether as a result of election or acceleration") (citing cases). Because the Note signed by WSG Charlottesville expressly provides for the prepayment penalty to apply in the event of acceleration, the court concludes that the premium is enforceable against the defendants.

In the absence of any other meritorious arguments regarding the amount due and owing, the court concludes that the calculation set forth in the affidavit from Jorge Rodriguez is just and accurate. Accordingly, the court will enter judgment in favor of the plaintiff in the amount set forth therein.

### V. Conclusion

For the reasons stated, the court concludes that the plaintiff is entitled to summary judgment as a matter of law, and that the defendants are liable for the amount due and owing under the Guaranty in the amount of $3,444,770.54, as of April 11, 2012, with per diem interest accruing at a rate of $642.29 until paid.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 17th day of June, 2013.

_____
Chief United States District Judge